IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 31, 2003 Session

## WILLARD EUGENE MALONE v. JUDY MAE BISHOP MALONE

**Appeal from the Chancery Court for Washington County**
**No. 28493      G. Richard Johnson, Chancellor**

**FILED MAY 1, 2003**

**No. E2002-01257-COA-R3-CV**

In this post-divorce case, Willard Eugene Malone (Husband) filed a motion requesting the Trial Court to decrease or discontinue his alimony payments to Judy Mae Bishop Malone (Wife). The sole basis for the motion was Husband's allegation that Wife "is cohabiting with a third person . . .and is no longer in need of the alimony paid by [Husband]." Wife denied that a reduction or elimination of alimony was appropriate, alleging that the person who had lived with her did not provide her financial support or contribution, and that he no longer lived in her trailer at the time of her answer. Wife also alleged that she remained in need of the alimony payments. The Trial Court found no substantial material change in circumstances and ordered Husband to continue paying alimony in the amount of $1000 per month. Husband appeals. We affirm the judgment of the Trial Court.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Michael May, Kingsport, for the Appellant, Willard Eugene Malone

John P. Chiles, Kingsport, and Thomas F. Bloom, Nashville, for the Appellee, Judy Mae Bishop Malone

### OPINION

The parties were divorced in 1993. In the final decree of divorce, the Court found that Husband's gross income for 1992 was $57,712.12, and that Wife "was in no condition for future employment" due to her various physical ailments. The Court set Husband's "permanent" alimony payments in the amount of $1000 per month.

Husband filed a motion to terminate or modify his alimony obligation on October 15, 2001. As noted above, the sole ground for his motion was that Wife was cohabiting with one Alan Carver in the trailer in which she lived. In her answer, Wife admitted that Mr. Carver had lived in her trailer in a separate bedroom. Wife denied that Mr. Carver had provided any support to her. Wife further alleged that Mr. Carver had moved out of the trailer and no longer lived with her. Wife argued that there had been no substantial and material change of circumstances, and that she remained in need of the alimony payments. Wife requested that the Court increase her alimony payments, and grant her attorney's fees for defending this action.

After a hearing on March 7, 2002, the Trial Court found that there had been no substantial and material change in circumstances and that "Mr. Carver is not and never has contributed to the support [of Wife] or that [Wife] has never contributed to the support of Mr. Carver." The Court refused to modify Husband's alimony payments. The Court also refused to award Wife attorney's fees. On appeal, Husband argues that the Court erred in refusing to decrease or eliminate his alimony payments, and Wife argues that the Court should have increased them and awarded her attorney's fees.

As the Trial Court recognized, the governing statute in this case is T.C.A. 36-5-101(a)(3), which provides in relevant part as follows:

> (3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:
>
> (A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or
>
> (B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

This is a non-jury case and, accordingly, our review is *de novo* upon the record of the Trial Court. A trial court's findings of fact are entitled to a presumption of correctness and, absent evidence preponderating to the contrary, we must affirm those findings pursuant to T.R.A.P. 13(d). *Kincaid v. Kincaid*, 912 S.W.2d 140 (Tenn.Ct.App.1995). There is no presumption of correctness regarding a trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996).

The Supreme Court has recently stated the following in regard to our standard of review in cases involving a modification of spousal support payments:

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn.Ct.App.1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn.Ct.App.1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn.Ct.App.1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn.Ct.App.1998); see also *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn.Ct.App.1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.").

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

Wife's sworn statement of income and expenses reveals that her sole source of income is the $1000 per month alimony payments. Her listed expenses total $1401.87 per month, and she testified that she has had to borrow money on credit cards in an attempt to cover the monthly deficit. Both Wife and Mr. Carver testified at the hearing that neither of them provided any financial support to the other. Mr. Carver stated that during the eleven months when he lived in Wife's trailer, he would occasionally buy some groceries for her. Wife testified that Mr. Carver did some household maintenance work such as mowing the lawn and some plumbing and electrical work that she was physically unable to do.

The only evidence presented by Husband to support his assertion is a credit application for a truck purchased by Mr. Carver. The application lists Wife's address as his mailing address, lists "8 years" for "time at address," and $259 for a mortgage or rent payment. Mr. Carver and Wife testified that an automobile salesman filled out the application as they were speaking with him, and that neither of them provided the salesman with the "8 years" figure. Mr. Carver testified that the salesman did not ask him how long he had lived at his listed mailing address.

Regarding the $259 mortgage or rent figure, Wife, who went with Mr. Carver to see the truck he was purchasing but did not co-sign on the loan, testified as follows:

> Q: Why did Mr. Carver tell the man that took his application that his monthly payment on the house was Two Hundred and Fifty-Nine Dollars a month?

A: He didn't tell them.

Q: Were you sitting there?

A: I was sitting beside of him and the man asked him where he lived and he said, "I just retired from the military." He said, "Do you own or do you rent and how much is your rent?" and he looked at me, and I said, "I own it. I live there."

Q: And you told him your payment was Two Fifty Nine a month?

A: I just told him the first payment, my first mortgage is Two Fifty Nine.

Q: And you knew he was putting that down on Mr. Carver's loan application?

A: No, I didn't. I didn't know he was writing all of that down. He was just talking.

Wife testified that she considers herself totally disabled and unable to work due to her health condition. Wife suffers from severe arthritis and proctitis, a condition which causes uncontrollable diarrhea. She is on medication for an acid reflux disorder and testified that she is facing surgery for a mass on her cervix and a cyst on one of her ovaries.

Based on our review of the record and the pertinent statutory authorities, we do not find that the Trial Court abused its discretion in ordering that Husband continue to pay $1000 per month in alimony payments to Wife. The Court's conclusions in this case were primarily driven by its determination of the credibility of the various witnesses. We also find no error in the Court's refusal to award Wife her attorney's fees.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below, which are, as are the costs of this appeal, adjudged against the Appellant, Willard Eugene Malone, and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

-4-